B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Auto Money North LLC | DEFENDANTS<br>Travis Abernathy, et al. |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Stanley H. McGuffin, Esq.; Haynsworth Sinkler Boyd, PA;<br>PO Box 11889; Columbia, SC 29211-1889; 803-779-3080 | ATTORNEYS (If Known) |
| PARTY (Check One Box Only)<br>☒ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor    ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

1. Declaratory judgment pursuant to 11 USC Sec. 362; 2.  Injunctive Relief Pursuant to 11 USC Secs. 105(a) and 362; 3. Application for Temporary Restraining Order

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
    (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 1️⃣ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
2️⃣ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
3️⃣ 02-Other (e.g. other actions that would have been brought in state court
    if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand  $ |

| Other Relief Sought |
|---|
| Preliminary injunction and temporary restraining order |

**B1040 (FORM 1040) (12/15)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Auto Money North LLC | BANKRUPTCY CASE NO.<br>22-03309 | |
| DISTRICT IN WHICH CASE IS PENDING<br>South Carolina | DIVISION OFFICE<br>Greenville | NAME OF JUDGE<br>Burris |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br><br>12/05/2022 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Stanley H. McGuffin | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **AUTO MONEY NORTH LLC,** | ) | |
| | ) | **Case No. 22-03309** |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| **AUTO MONEY NORTH LLC,** | ) | |
| | ) | **Adversary Proc. No. 22-_____** |
| Plaintiff, | ) | |
| | ) | **COMPLAINT** |
| v. | ) | |
| | ) | |
| **THOSE PARTIES LISTED ON** | ) | |
| **APPENDIX A TO THIS COMPLAINT;** | ) | |
| **and JOHN AND JANE DOES 1-1000,** | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Auto Money North LLC ("Debtor" or "Plaintiff"), debtor in possession, by and through its undersigned counsel, hereby files this Complaint pursuant to 11 U.S.C. §§ 105(a) and 362, Fed. R. Bankr. P. 7001(7), Fed. R. Bankr. P. 7001(9), Fed. R. Bankr. P. 7065, and Fed. R. Civ. P. 65, against (i) the parties listed on Appendix A attached hereto (collectively, the "North Carolina Litigants," and each individually, a "North Carolina Litigant") and (ii) John and Jane Does 1-1000 (together with the North Carolina Litigants, the "Defendants") for a declaratory order and/or injunctive relief through and until the entry of an order confirming the Debtor's Plan of Reorganization. In support of this Complaint, the Debtor states as follows:

## INTRODUCTION

The Debtor commenced the underlying Chapter 11 Case to, among other things, resolve approximately three dozen lawsuits currently pending in North Carolina. The lawsuits began in

1

2019 and relate to loans that are legal under South Carolina law and that were made to North Carolina residents.  The litigation in question has allowed North Carolina state courts and legislature to unconstitutionally extend North Carolina lending laws and regulations across state lines to regulate lending activities conducted entirely within South Carolina by a licensed South Carolina lender.    The improper intrusion of North Carolina courts into South Carolina fundamentally runs afoul of our federalist system and threatens the Debtor's legal and valid business model.  Further, the ongoing North Carolina Litigation threatens the Debtor's business and its ability to reorganize.  The Debtor hereby seeks confirmation, or an extension, of the protections of the automatic stay and injunctive relief preventing the continuance or institution of further litigation against its affiliate, AutoMoney, Inc.

The Debtor also requests a preliminary injunction pursuant to 11 U.S.C. § 105(a), and a preliminary injunction entered on limited notice, to enjoin the prosecution and institution of litigation regarding the Debtor's business model.

Contemporaneously with this Complaint, the Debtor has filed a motion (the "Motion") seeking the same relief requested herein and setting forth additional grounds for why the relief requested herein is warranted.  The Debtor incorporates the Motion herein as if set out in full.

## JURISDICTION AND VENUE

1.      This adversary proceeding arises out of and relates to the Chapter 11 bankruptcy case of the Debtor pending before the United States Bankruptcy Court for the District of South Carolina (the "Court").

2.      This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

3.      This adversary proceeding is a core proceeding pursuant to, among others, 28 U.S.C. § 157(b)(2)(A) and (O).

4.      This Court can exercise its subject matter jurisdiction pursuant to 28 U.S.C. § 157(b)(1).

5.      Plaintiff consents to this Court having authority to enter a final orders or final judgments in this matter.

6.      Venue is proper in the Court pursuant to 28 U.S.C. § 1409.

## BASIS FOR RELIEF

7.      The statutory bases for the relief requested herein are Sections 105(a) and 362(a) of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

8.      The Debtor has commenced this adversary proceeding pursuant to Fed. R. Bankr. P. 7001(7), 7001(9), and 7065.

9.      The Debtor has made no prior request for the relief requested herein to this or any other court.

## PARTIES

10.     The Debtor is a South Carolina limited liability company. The Debtor was organized in May of 2019 to operate eighteen (18) pre-existing consumer lending locations previously operated by AutoMoney, Inc.  In November 2019, the Debtor acquired certain existing lending contracts originated by AutoMoney, Inc. from those locations. AutoMoney, Inc. is an affiliate of the Debtor pursuant to 11 U.S.C. § 101(2).  Since its inception, the Debtor has continued to originate lending contracts with new customers.

11.     Each named Defendant on Appendix A to this Complaint is a North Carolina Litigant who, upon information and belief, is a resident of North Carolina prosecuting a pending

action against the Debtor and/or AutoMoney, Inc.  The purpose of such litigation is to void the obligations incurred to the Debtor and/or AutoMoney, Inc. under North Carolina consumer protection laws and to recover damages, including treble damages, pursuant to such laws (the "North Carolina Litigation").  Absent the relief requested herein and in the Motion, the Debtor anticipates that the North Carolina Litigants to continue to prosecute the North Carolina Litigation against only AutoMoney, Inc.

12.     Defendants John and Jane Does 1-1000 are prospective, putative plaintiffs who may, at any time while the Debtor's Chapter 11 bankruptcy case is pending, seek to commence an action against AutoMoney, Inc. similar to the North Carolina Litigation in an effort to avoid the consequences of the automatic stay of 11 U.S.C. § 362(a).

## FACTUAL BACKGROUND

***The Businesses of the Debtor and AutoMoney, Inc.***

13.     The Debtor and AutoMoney, Inc. make loans secured by motor vehicle titles, commonly known as "title loans."

14.     The Debtor and AutoMoney, Inc. are supervised lenders licensed and overseen by the South Carolina Division of Consumer Finance, the South Carolina Board of Financial Institutions, and the South Carolina Department of Consumer Affairs.  The lending activities of both entities are authorized and legal under South Carolina law.  The Debtor and AutoMoney, Inc. have at all times relevant maintained compliance with lending laws and regulations in South Carolina.

15.     Neither the Debtor nor AutoMoney, Inc. are, or ever have been, registered to do business in North Carolina.

4

16.     Neither the Debtor nor AutoMoney, Inc. issue, or have ever issued, title loans within the borders of North Carolina.

17.     Neither the Debtor nor AutoMoney, Inc. have, or have ever had, offices, employees, real or personal property, or registered service agents located within the borders of North Carolina.

18.     The Debtor and its affiliates maintain a single internet website, which is accessible worldwide.  The website discloses on its front page that title loans are prohibited within North Carolina.

19.     The Debtor and AutoMoney, Inc. do not permit customers or potential customers to apply for title loans over the internet or to make payments over the internet.

20.     The only means by which a customer or potential customer may obtain a loan issued by either the Debtor or AutoMoney, Inc. is for that individual to travel to a store location within South Carolina, complete a written loan application, have his or her vehicle inspected onsite, and execute a loan agreement while physically present in the store location.

21.     All loans issued by the Debtor and AutoMoney, Inc. are contingent on underwriting factors that include (a) a loan application completed and signed only while the customer is in South Carolina, (b) verification of the customer's employment status, (c) verification of the customer's monthly income, (d) verification of a vehicle title clear of all liens and encumbrances, (e) proof of vehicle insurance, and (f) establishment of the value of the vehicle as determined by the onsite vehicle inspection.

22.     If a loan is issued by the Debtor or by AutoMoney, Inc., it is issued by a paper check given to the customer while the Customer is at a particular store in South Carolina. All such checks are drawn on a South Carolina bank account owned by the Debtor or by AutoMoney, Inc.

All payments made upon title loans are deposited into a South Carolina bank account owned by the Debtor or AutoMoney, Inc.

23.     All customers of the Debtor or AutoMoney, Inc., including the North Carolina Litigants and John and Janes Does 1-1000, execute promissory notes and security agreements only while physically present in South Carolina.

24.     All promissory notes and security agreements executed by the customers of the Debtor or AutoMoney, Inc. provide that such documents are to be interpreted, construed, and governed by the laws of South Carolina without regard to conflicts of law rules and principles that would cause application of any law other than that of South Carolina. These provisions appear on the front page of all such documents. All customers are required to initial by these provisions in order to acknowledge such terms.

***The Creation of the Debtor and Its Acquisition of Title Loans Held by AutoMoney, Inc.***

25.     On May 7, 2019, the Debtor was created by the filing of Articles of Organization in the office of the Secretary of State of South Carolina.

26.     On November 18, 2019, the Debtor and AutoMoney, Inc. entered into an asset purchase agreement and related documentation (the "APA"), by which the Debtor acquired all of AutoMoney, Inc.'s rights under the store leases and related agreements for 18 stores in northern South Carolina, all associated loans and notes outstanding at those locations, all security agreements and instruments relating to such notes and loans, and other assets.

27.     Section 1(c) of the APA provides that the Debtor specifically agrees to assume all liabilities associated the assets transferred thereunder, including but not limited to the contingent liabilities associated with the issuance of title loans to customers from North Carolina. Section 1(c) provides, in pertinent part, as follows:

It is specifically agreed to by the Parties, that any liability associated with the Assets being transferred to Buyer by Seller herein, shall be expressly assumed by the Buyer in this transaction, which includes - but is not limited to - the contingent liabilities associated with making title loans to North Carolina customers.

28.    Section 8(b) of the APA also provides that the Debtor would indemnify AutoMoney, Inc. against all losses and liabilities AutoMoney, Inc. incur arising from or relating to AutoMoney, Inc.'s acts, omissions, or transactions after the closing of the APA transaction. Section 8(b)provides as follows:

Buyer shall indemnify, defend at Buyer's expense (unless defense is being provided by an insurance carrier), and hold harmless Seller against, and in respect of, any and all claims, demands, losses, costs, expenses, obligations, liabilities, damages, recoveries, and deficiencies (including interest penalties and reasonable attorney's fees) that Seller shall incur or suffer, which arise, result from, or relate to any claim, demand, or liability (including any tax deficiency or assessment) and the reasonable cost of defense, asserted against Seller after the Closing which arises or accrues from acts, omissions, or transactions occurring after the Closing

29.    A true and complete copy of the APA is attached to the Declaration of Jeremy Blackburn in Support of Chapter 11 Petition and Certain First Day Motions (Dkt. No. 8 in Bankruptcy Case No. 22-03309) (the "Declaration").  The Declaration is incorporated herein by reference as if set out fully herein.

30.    In connection with the APA, on November 18, 2019, the Debtor also executed, among other things, the following: (a) a promissory note to AutoMoney, Inc. for the purchase price and (b) a security agreement granting AutoMoney, Inc. a security interest in all or substantially all of the Debtor's tangible and intangible personal property, including inventory, equipment, accounts, accounts receivable, instruments, and chattel paper.

31.    True and complete copies of the promissory note and security agreement are attached to the Declaration.

32.      AutoMoney, Inc. properly perfected its security interest in the Debtor's assets by filing a financing statement with the office of the South Carolina Secretary of State on October 6, 2022.

**Pre-petition Litigation by the North Carolina Litigants**

33.      On August 9, 2019, *Cannon et al. v. AutoMoney, Inc. et al.* was filed in Guilford County, and is now pending before the Superior Court of Richmond County, North Carolina as Case No. 20-CVS-01145.  This action is asserted by 145 North Carolina Litigants against both the Debtor and AutoMoney, Inc..

34.      On August 15, 2019, as *Stone et al. v. AutoMoney, Inc. et al.*, Case No. 20-CVS-1099, in Superior Court for Guilford County and is now pending before the Superior Court for Sampson County, North Carolina.  This action is asserted by eight (8) North Carolina Litigants against both the Debtor and AutoMoney, Inc. On September 25, 2019, *Pippins v. AutoMoney, Inc.* was filed in Gaston County, and remains pending before the Superior Court of Gaston County, North Carolina as Case No. 20-CVS-04264.  This action is asserted by one (1) North Carolina Litigant against only AutoMoney, Inc.

35.      On March 20, 2020, *Simmons v. AutoMoney, Inc., et al.* was filed in Mecklenburg County, and remains pending before the Superior Court of Mecklenburg County, North Carolina as Case No. 21-CVS-01524.  This action was asserted originally against only AutoMoney, Inc. by one (1) North Carolina Litigant, with the Debtor added as a defendant in October of 2022.

36.      On March 20, 2020, *Wallace v. AutoMoney, Inc.* was filed in Richmond County, and remains pending before the Superior Court of Richmond County, North Carolina as Case No. 20-CVS-00245.  This action is asserted by one (1) North Carolina Litigant against only AutoMoney, Inc.

37.     On March 23, 2020, *Leggett v. AutoMoney, Inc. et al.* was filed in Mecklenburg County, and remains pending before the Superior Court of Mecklenburg County as Case No. 21-CVS-01526. This action was asserted originally against only AutoMoney, Inc. by one (1) North Carolina Litigant, with the Debtor added as a defendant in October of 2022.

38.     On March 25, 2020, *Davis v. AutoMoney, Inc.* was filed in Richmond County, and is now pending before the Superior Court of Cleveland County, North Carolina as Case No. 21-CVS-00131. This action is asserted by one (1) North Carolina Litigant against only AutoMoney, Inc.

39.     On May 13, 2020, *Archie v. AutoMoney, Inc.* was filed in Richmond County, and is now pending before the Superior Court of Mecklenburg County, North Carolina as Case No. 21-CVS-01525. This action is asserted by one (1) North Carolina Litigant against only AutoMoney, Inc.

40.     On May 13, 2020, *Harris v. AutoMoney, Inc. et al.* was filed in Richmond County, and is now pending before the Superior Court of Mecklenburg County, North Carolina as Case No. 21-CVS-01523. This action was asserted originally against only AutoMoney, Inc. by one (1) North Carolina Litigant, with the Debtor added as a defendant in October of 2022.

41.     On May 18, 2020, *Henson v. AutoMoney, Inc.* was filed in Scotland County, and is now pending before the Superior Court of New Hanover County, North Carolina as Case No. 21-CVS-00535. This action is asserted by one (1) North Carolina Litigant against only AutoMoney, Inc.

42.     On May 18, 2020, *Troublefield v. AutoMoney, Inc.* was filed in Scotland County, and remains pending before the Superior Court of Scotland County, North Carolina as Case No.

20-CVS-00322.    This action is asserted by one (1) North Carolina Litigant against only AutoMoney, Inc.

43.    On May 20, 2020, *Adams v. AutoMoney, Inc.* was filed in Richmond County, and is now pending before the Superior Court of Gaston County, North Carolina as Case No. 21-CVS-00324.  This action is asserted by two (2) North Carolina Litigants against only AutoMoney, Inc.

44.    May 20, 2020, *Banks v. AutoMoney, Inc. et al.* was filed in Gaston County, and remains pending before the Superior Court of Gaston County, North Carolina as Case No. 21-CVS-00391.  This action was asserted originally against only AutoMoney, Inc. by one (1) North Carolina Litigant, with the Debtor added as a defendant in October of 2022.

45.    On May 20, 2020, *Hundley v. AutoMoney, Inc.* was filed in Rockingham County, and remains pending before the Superior Court of Rockingham County, North Carolina as Case No. 20-CVS-01204.  This action is asserted by one (1) North Carolina Litigant against only AutoMoney, Inc.

46.    On May 13, 2020, *Smith v. AutoMoney, Inc.* was filed in Hoke County, and remains pending before the Superior Court of Hoke County, North Carolina as Case No. 20-CVS-00295. This action is asserted by one (1) North Carolina Litigant against only AutoMoney, Inc.

47.    On May 26, 2020, *Johnson v. AutoMoney, Inc. et al.* was filed in Richmond County, and is now pending before the Superior Court of Mecklenburg County, North Carolina as Case No. 21-CVS-01054.  This action is asserted by one (1) North Carolina Litigant against both AutoMoney, Inc. and the Debtor.

48.    On June 4, 2020, *Wall et al. v. AutoMoney, Inc.* was filed in Richmond County, and remains pending before the Superior Court of Richmond County, North Carolina as Case No. 20-

CVS-00473. This action is asserted by fifteen (15) North Carolina Litigants against only AutoMoney, Inc.

49.    On June 18, 2020, *Leake v. AutoMoney, Inc.* was filed in Richmond County, and remains pending before the Superior Court of Richmond County, North Carolina as Case No. 20-CVS-00508. This action is asserted by two (2) North Carolina Litigants against only AutoMoney, Inc.

50.    On June 23, 2020, *Warley v. AutoMoney, Inc.* was filed in Guilford County, and remains pending before the Superior Court of Guilford County, North Carolina as Case No. 20-CVS-05460. This action is asserted by one (1) North Carolina Litigant against only AutoMoney, Inc.

51.    On July 3, 2020, *Hale et al. v. AutoMoney, Inc.* was filed in Richmond County, and is now pending before the Superior Court of Lincoln County, North Carolina as Case No. 21-CVS-01054. This action is asserted by two (2) North Carolina Litigants against only AutoMoney, Inc.

52.    On August 13, 2020, *Estate of Rice v. AutoMoney, Inc. et al.* was filed in Mecklenburg County, was refiled, and is now pending before the Superior Court of Mecklenburg County, North Carolina as Case No. 21-CVS-01495. This action was asserted originally against only AutoMoney, Inc. by one (1) North Carolina Litigant, with the Debtor added as a defendant in October of 2022.

53.    On August 13, 2020, *Johnson v. AutoMoney, Inc. et al.* was filed in Mecklenburg County, was refiled, and is now pending before the Superior Court of Mecklenburg County, North Carolina as Case No. 21-CVS-01762. This action was asserted originally against only AutoMoney, Inc. by one (1) North Carolina Litigant, with the Debtor added as a defendant in October of 2022.

11

54.    On September 28, 2020, *Williams v. AutoMoney, Inc.* was filed in Columbus County, and remains pending before the Superior Court of Columbus County, North Carolina as Case No. 21-CVS-00105.  This action is asserted by one (1) North Carolina Litigant against only AutoMoney, Inc.  .

55.     On October 16, 2020, *Phillips v. AutoMoney, Inc.* was filed in Cleveland County, and remains pending before the Superior Court of Cleveland County, North Carolina as Case No. 21-CVS-00189.   This action is asserted by one (1) North Carolina Litigant against only AutoMoney, Inc.

56.    On February 8, 2021, *McDonald et al. v. AutoMoney, Inc. et al.* was filed in Richmond County, and is now pending before the Superior Court of Richmond County, North Carolina as Case No. 21-CVS-00128.  This action is asserted by four (4) North Carolina Litigants against AutoMoney, Inc. and the Debtor.

57.    On March 8, 2021, *Williams et al. v. AutoMoney, Inc. et al.* was filed in Richmond County, and remains pending before the Superior Court of Richmond County, North Carolina as Case No. 21-CVS-00221.  This action is asserted by four (4) North Carolina Litigants against AutoMoney, Inc. and the Debtor.

58.    On June 1, 2021, *Davis v. AutoMoney, Inc. et al.* was filed in Gaston County, and remains pending before the Superior Court of Gaston County, North Carolina as Case No. 21-CVS-02261.  This action is asserted by one (1) North Carolina Litigant against both AutoMoney, Inc. and the Debtor.

59.    On October 11, 2021, *Shepard et al. v. AutoMoney, Inc. et al.* was filed in Richmond County, and remains pending before the Superior Court of Richmond County, North Carolina as

Case No. 21-CVS-00994.  This action is asserted by three (3) North Carolina Litigants against AutoMoney, Inc. and the Debtor.

60.    On March 23, 2022, *Hughes et al. v. AutoMoney, Inc. et al.* was filed in Gaston County, and remains pending before the Superior Court of Gaston County, North Carolina as Case No. 22-00973.  This action is asserted by seven (7) North Carolina Litigants against AutoMoney, Inc. and the Debtor.

61.    On August 19, 2022, *Archie et al. v. AutoMoney, Inc. et al.*  was filed in Guilford County and remains pending before the Superior Court of Guilford County, North Carolina as Case No. 22-CVS-07019.  This action is asserted by twenty-five (25) North Carolina Litigants against both AutoMoney, Inc. and the Debtor.

62.    On August 12, 2022, *Bailey et al. v. AutoMoney, Inc. et al.* was filed in Guilford County, and remains pending before the Superior Court of Guilford County, North Carolina as Case No. 22-CVS-06906.  This action is asserted by thirty-five (35) North Carolina Litigants against both AutoMoney, Inc. and the Debtor.

63.    On September 6, 2022, *Wilson et al. v. AutoMoney, Inc. et al.* was filed in Guilford County, and remains pending before the Superior Court of Guilford County, North Carolina as Case No. 22-CVS-07354.  This action is asserted by thirty-five (35) North Carolina Litigants against both AutoMoney, Inc. and the Debtor.

64.    On September 21, 2022, *Bolton et al. v. AutoMoney, Inc. et al.* was filed in Guilford County, and remains pending before the Superior Court of Guilford County, North Carolina as Case No. 22-CVS-07613.  This action is asserted by thirty-four (34) North Carolina Litigants against both AutoMoney, Inc. and the Debtor.

65.     On October 11, 2022, *Jackson et al. v. AutoMoney, Inc. et al.* was filed in Guilford County, and remains pending before the Superior Court of Guilford County, North Carolina as Case No. 22-CVS-08008.  This action is asserted by thirty-two (32) North Carolina Litigants against both AutoMoney, Inc. and the Debtor.

66.     On October 17, 2022, *Melton et al. v. AutoMoney, Inc. et al.* was filed in Mecklenburg County, and remains pending before the Superior Court of Mecklenburg County, North Carolina as Case No. 22-CVS-16658.  This action is asserted by two (2) North Carolina Litigants against both AutoMoney, Inc. and the Debtor.  \

67.     On November 8, 2022, *Sinclair et al. v. AutoMoney, Inc. et al.* was filed in Guilford County, and remains pending before the Superior Court of Guilford County, North Carolina as Case No. 22-CVS-08527.  This action is asserted by thirty-five (35) North Carolina Litigants against both AutoMoney, Inc. and the Debtor.

***The Debtor's Decision to File for Chapter 11 Reorganization***

68.     As of the Debtor's December 2, 2022 petition date (the "Petition Date"), the Debtor and/or AutoMoney, Inc. were defendants in approximately three dozen actions asserted by approximately 400 North Carolina Litigants, as outlined above.  The Debtor and AutoMoney, Inc. continue to operate under the pending threat of additional litigation of the same nature.

69.     The complaints in the North Carolina Litigation seek to avoid the North Carolina Litigants' contractual obligations to the Debtor and/or AutoMoney, Inc., with some or all of such complaints asserting treble damages and a claim for attorneys' fees pursuant to Chapter 75 of the North Carolina General Statutes.  Such potential liability (though vigorously disputed by the Debtor and AutoMoney, Inc.) would be crippling, if not fatal, to the Debtor's business if such liability was awarded to the North Carolina Litigants.

70.     On July 19, 2022, the North Carolina Court of Appeals simultaneously issued seven differing published and unpublished opinions related to the North Carolina Litigation.  In those opinions, that court held, among other things, that the "fundamental public policy" of North Carolina rendered the choice of law and choice of venue provisions in the Debtor's and AutoMoney, Inc.'s loan documents void as a matter of public policy and the plaintiffs could bring North Carolina claims.  *See, e.g.*, *Troublefield v. AutoMoney, Inc.*, 876 S.E.2d 790, 804 (N.C. App. 2022).  AutoMoney, Inc. has filed a petition for discretionary review to the North Carolina Supreme Court in each of the seven cases.

71.     The situation with the North Carolina Litigation is untenable for the Debtor given the cost, uncertainty, anticipated duration, and unknown outcome.  The only available option to resolve and administer all current and future title loan litigation in an efficient and equitable manner is through a Chapter 11 reorganization.

## NATURE OF THE RELIEF REQUESTED

72.     To prevent the severe and irreparable harm the Debtor would suffer in the event that the Defendants herein are permitted to continue or commence North Carolina Litigation against AutoMoney, Inc. during the Debtor's Chapter 11 case, the Debtor seeks: (1) a declaration that, while the Debtor's bankruptcy case is pending, the commencement or continuation of any North Carolina Litigation against AutoMoney, Inc. constitutes a violation of the automatic stay imposed by Section 362 of the Bankruptcy Code; and/or (2) a preliminary injunction prohibiting the Defendants herein from commencing or continuing any North Carolina Litigation against AutoMoney, Inc. while the Debtor's Chapter 11 case remains pending.  Such preliminary injunction would include, without limitation: (a) any and all prosecution of, or activities with respect to, the North Carolina Litigation; (b) the pursuit of discovery from AutoMoney, Inc. or its

officers, directors, employees or agents; (c) the enforcement of any discovery order against AutoMoney, Inc.; (d) further motions practice related to the foregoing; and (e) any collection activity on account of North Carolina Litigation against AutoMoney, Inc. or its officers, directors, employees or agents or their respective assets. The Debtor also seeks a temporary restraining order, issued on limited notice, prohibiting the Defendants from commencing or continuing the prosecution of North Carolina Litigation against AutoMoney, Inc. pending a final hearing on the merits.

## FIRST CAUSE OF ACTION
### (DECLARATORY JUDGMENT PURSUANT TO 11 U.S.C. § 362)

73.    The Debtor incorporates paragraphs 1 through 73 by reference as if fully set forth herein.

74.    11 U.S.C. § 362(a)(1) prohibits the "commencement or continuation . . . of a judicial . . . proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title."

75.    The provisions of 11 U.S.C. § 362(a) automatically stay the continuation or commencement of North Carolina Litigation against AutoMoney, Inc. As set forth above, a substantial majority of the claims asserted by North Carolina Litigants against AutoMoney, Inc. are on title loans acquired by the Debtor by virtue of the APA. Therefore, such actions are in fact attempts to liquidate and recover claims against the Debtor.

76.    The automatic stay imposed by 11 U.S.C. § 362(a)(1) extends of its own force to enjoin actions against parties who share such an identity of interests with the Debtor in respect to those actions that the Debtor is, in effect, the real-party defendant. The Debtor and AutoMoney, Inc. are affiliates that engage in licensed and regulated consumer lending practices in South

Carolina.  In all of the North Carolina Litigation, and even in the instances where AutoMoney, Inc. is the sole defendant, the findings of fact and conclusions of law that may arise in such litigation creates significant and unacceptable risks of binding or prejudicing the Debtor through *res judicata*, collateral estoppel, or issue preclusion; deprives the Debtor of the benefits of the automatic stay; and creates an evidentiary record that prejudices the Debtor.

77.    Section 362(a)(3) of the Bankruptcy Code operates automatically to stay, among other actions, "the commencement or continuation . . . of a . . . proceeding against the debtor . . . to obtain possession of . . . or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

78.    Further, to the extent that the claims asserted in the North Carolina Litigation assert or could assert claims against AutoMoney, Inc. that may be property of the Debtor's estate, and to the extent the claims asserted in the North Carolina Litigation diminish the resources available for recovery to the Debtor's estate under derivative theories such as fraudulent transfer or alter ego, such claims are and should be stayed by 11 U.S.C. § 362(a)(3).

79.    Accordingly, the declaratory relief the Debtor seeks in this Complaint and in the Motion is necessary and appropriate to protect the integrity of this bankruptcy proceeding and to provide the Debtor to the benefits of bankruptcy to which it is entitled.

80.    The Debtor respectfully requests that this Court: (a) after notice and hearing, enter an order and judgment declaring that the commencement or continuation of any North Carolina Litigation against AutoMoney, Inc. while the Debtor's Chapter 11 case is pending violates the automatic stay imposed by 11 U.S.C. § 362(a).

## SECOND CAUSE OF ACTION
### (INJUNCTIVE RELIEF PURSUANT TO 11 U.S.C. §§ 105(a) and 362)

81.    The Debtor incorporates paragraphs 1 through 81 by reference as if fully set forth herein.

82.     Section 105(a) of the Bankruptcy Code authorizes and empowers this Court to issue any orders that will further the purposes and goals of the Bankruptcy Code, assist in the orderly and effective administration of the Debtor's underlying Chapter 11 case, aid in the preservation of the assets of the Debtor's estate, and aid in the formulation and confirmation of a Chapter 11 plan that maximizes recovery to all of the Debtor's creditors.

83.     Pursuant to Sections 105(a) and 362 of the Bankruptcy Code, this Court may enjoin creditor actions against third parties where necessary to prevent an adverse impact on the Debtor's estate or to assure the orderly administration of the Debtor's Chapter 11 estate and proceedings, including by fully effectuating the protections of the automatic stay. An injunction is appropriate in this case to prohibit the Defendants herein from filing or continuing to prosecute any North Carolina Litigation against AutoMoney, Inc. while the Debtor's Chapter 11 case remains pending. Further, such an injunction is critical to the Debtor's ability to achieve the purposes for which it commenced this reorganization case.

84.     In the Fourth Circuit, courts considering the propriety of an injunction under Section 105(a) apply the traditional four-factor test for injunctions, as tailored to the unique circumstances of bankruptcy. In bankruptcy, these four factors are: (a) the debtor's reasonable likelihood of successful reorganization; (b) the imminent risk of irreparable harm to the debtor's estate in the absence of an injunction; (c) the balance of harms between the debtor and its creditors and (d) whether the public interest weighs in favor of an injunction.

85.     While courts typically consider all four factors, the Fourth Circuit has made clear that the critical, if not decisive, issue in whether an injunction under Section 105(a) is warranted is whether and to what extent the non-debtor litigation interferes with the debtor's reorganization efforts.  Here, the interference with the Debtor's reorganization is sufficiently decisive to grant the

injunction without consideration of the other factors. In any event, as set forth below, the requested injunction would be appropriate under the traditional four-factor test.

86.     The Debtor is likely to prevail on the merits of its complaint under Fourth Circuit standards. The Debtor's prospects of a successful reorganization are strong. The Debtor has entered this case in good faith in an effort to resolve, permanently, fully, and efficiently, the pending and potential North Carolina Litigation. The Debtor has sufficient wherewithal to successfully complete the anticipated reorganization in this Chapter 11 case, as well as foreseeable access to post-petition financing, if any, as may be required to confirm a plan of reorganization.

87.     Failure to grant the requested injunction would irreparably harm the Debtor's reorganization efforts and defeat the purpose of its Chapter 11 case. Without injunctive relief, the Defendants herein would seek to liquidate hundreds, and perhaps thousands, of claims in piecemeal litigation against AutoMoney, Inc. in various North Carolina state courts. Such litigation diminishes and/or exercises control over assets of the Debtor's estate and prevents the Debtor from enjoying one of the primary benefits of the bankruptcy system: the automatic stay of 11 U.S.C. § 362(a). Additionally, the findings and fact and conclusions of law that may arise in such litigation creates significant and unacceptable risks of binding or prejudicing the Debtor through *res judicata*, collateral estoppel, or issue preclusion; deprives the Debtor of the benefits of the automatic stay; and creates an evidentiary record that prejudices the Debtor. Without the stay, and the procedural consolidation of all pending and future North Carolina Litigation into the singular debtor-creditor relationship afforded by bankruptcy, the Debtor cannot feasibly reorganize.

88.     The balance of the harms weighs heavily in favor of an injunction because prosecution of North Carolina Litigation against AutoMoney, Inc. would cause irreparable harm

to the Debtor and its estate.  Prosecution of North Carolina Litigation outside of this Court may liquidate claims against the Debtor and bind the Debtor with respect to rulings, judgments, and evidentiary records established in those cases. The continued litigation would also compromise the protections of the automatic stay.  In short, the entire purpose of the Chapter 11 Case would be thwarted.  Moreover, as between the Defendants herein the prosecution of dozens of cases across separate forums creates a risk of prejudice in favor of those who prosecuted their claims earliest.

89.     There is minimal, if any harm, to the Defendants herein from the issuance of an injunction.  The Defendants herein will not be deprived of the opportunity to prosecute the claims asserted in the North Carolina Litigation.  Those claims would be halted only temporarily.  If arising against the Debtor, such claims would be subject to administration in the Debtor's bankruptcy case. If arising solely against AutoMoney, Inc., those claims would be stayed until the expiration of the Debtor's stay unless otherwise resolved by this Court.  Such delay and the administration of claims in this Court does not outweigh the severe and irreparable harm to the Debtor's estate that would occur if the North Carolina Litigation were to continue even against only AutoMoney, Inc.

90.     Finally, the public interest weighs in favor of an injunction. There is a strong public interest in a successful Chapter 11 reorganization, and the requested injunctive relief is critical to the Debtor's reorganization efforts.  The public interest is also served by the resolution of all North Carolina Litigation in a single litigation process, rather than the vastly inefficient and piecemeal process faced by the parties.  As indicated in the adversary proceeding complaint filed contemporaneously herewith, the claims in the North Carolina Litigation, if successful, would implicate issues under the United States Constitution regarding federalism and the application of

one State's laws to legal commercial conduct occurring entirely within the borders of another State. The public interest is best served by consolidated and centralized proceedings in this Court.

91.    Accordingly, the requested injunction is appropriate and essential to the orderly and effective administration of the Debtor's estate.  Good cause exists for entry of injunctive relief pursuant to Sections 105(a) and 362(a) of the Bankruptcy Code, as well as Bankruptcy Rule 7065. The Debtor respectfully requests that this Court: (a) after notice and hearing, issue a preliminary injunction pursuant to Sections 105 and 362 of the Bankruptcy Code prohibiting the commencement or continuation of North Carolina Litigation against AutoMoney, Inc. while the Debtor's Chapter 11 case is pending and until confirmation of a plan of reorganization.

## THIRD CAUSE OF ACTION
### (APPLICATION FOR TEMPORARY RESTRAINING ORDER)

92.    The Debtor incorporates paragraphs 1 through 92 by reference as if fully set forth herein.

93.    To preserve the effectiveness of the automatic stay until this Court has the opportunity to hold a final hearing on the Debtor's request for declaratory and/or injunctive relief, and to prevent the foregoing harmful effects upon the Debtor's estate, the Debtor requests that, with limited notice, the Court issue a temporary restraining order prohibiting and enjoining the Defendants herein from filing or continuing to prosecute North Carolina Litigation against AutoMoney, Inc. until this Court has issued a final ruling on the merits.

94.    The issuance of a temporary restraining order is warranted for the reasons already set forth herein and as more fully set forth in the Motion.  In addition, it is appropriate for the Court to grant the temporary restraining order with limited notice to the Defendants herein. The Debtor cannot realistically provide effective notice to the many Defendants herein in the short period of time in which this Court's action is needed. Further, Defendants John and Jane Does 1-1000 are

21

putative plaintiffs for future actions of the same nature as the North Carolina Litigation against AutoMoney, Inc. and are unknown at this time. The Debtor respectfully requests that this Court enter a temporary restraining order: (a) prohibiting the Defendants from commencing or continuing to prosecute any North Carolina Litigation against AutoMoney, Inc. until the Court decides whether to grant the Debtor's request in this complaint and the motion filed contemporaneously herewith seeking declaratory and/or injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, the Debtor respectfully requests that this Court:

A.      Enter an order and judgment declaring that the commencement or continuation of any North Carolina Litigation against AutoMoney, Inc. while the Debtor's Chapter 11 case is pending violates the automatic stay imposed by 11 U.S.C. § 362(a);

B.      Issue a preliminary injunction pursuant to Sections 105 and 362 of the Bankruptcy Code prohibiting the commencement or continuation of North Carolina Litigation against AutoMoney, Inc.;

C.      Enter a temporary restraining order prohibiting the Defendants from commencing or continuing to prosecute any North Carolina Litigation against AutoMoney, Inc.; and

D.      Grant such other and further relief as the Court may deem proper.

Respectfully submitted, this the 5th day of December, 2022.

**HAYNSWORTH SINKLER BOYD, P.A.**

*/s/ Stanley H. McGuffin*
Stanley H. McGuffin (SC State Bar No. 3830)
P.O. Box 11889
Columbia, SC 29211
Telephone: 803-540-7836
Email: smcguffin@hsblawfirm.com
*Local Counsel for Auto Money North LLC*

- and -

**WALDREP WALL BABCOCK
& BAILEY PLLC**

Thomas W. Waldrep, Jr. (NC State Bar No. 11135)
Jennifer B. Lyday (NC State Bar No. 39871)
370 Knollwood St, Suite 600
Winston-Salem, NC 27103
Telephone: 336-722-6300
*Proposed Counsel for Auto Money North LLC*